In the Matter of the Arbitration between STANLEY J. STAKLINSKI, Respondent, and PYRAMID ELECTRIC COMPANY, Appellant.

First Department, November 25, 1958.

*Harold H. Levin* of counsel (*Howard Lichenstein, Marvin E. Frankel, Michael L. Matar* and *Unterberg & Unterberg,* with him on the brief; *Proskauer Rose Goetz & Mendelsohn,* attorneys), for appellant.

*Philip C. Samuels* of counsel (*Arthur Elfenbein* with him on the brief; *Jacob Gruber,* attorney), for respondent.

Stevens, J. This is an appeal from a judgment entered March 12, 1958, confirming an arbitration award which (1) determined the action of respondent's board of directors terminating petitioner's employment to be arbitrary and (2) determined the contract of employment to be still effective and directed petitioner's reinstatement. The appeal brings up for review also an order of Special Term which granted petitioner's motion to confirm and denied respondent's motion to vacate the award.

On or about November 1, 1954, the parties, residents of New Jersey, entered into an agreement whereby the respondent hired the petitioner as its production manager. The agreement by its terms was to expire December 31, 1965. The petitioner who had been president of the corporation since its formation in 1945, and who continued to serve as such until 1956, was the largest single stockholder of the corporation.

The agreement provided, in part, that if the petitioner were " unable to substantially attend " to his duties for a period of three months, respondent's board of directors should meet " at the expiration of such period, to determine whether the disability is permanent or temporary." If, in the board's discretion, such disability was permanent, petitioner's services could be terminated.

On June 27, 1956, the board of directors of respondent met and adopted a resolution which purported to be in accordance with its powers under the contract of employment. The resolu-

tion declared petitioner unable to perform the duties of his position and, in accordance with the provisions of article 6 of the contract, established a scale of compensation for 3 years, at the end of which time respondent's liability to petitioner would cease.

Petitioner sought arbitration, contending, *inter alia,* that he had not been disabled and that the act of the board and its finding constituted an abuse of discretion. He asked that the action of the board be declared null and void, the contract be held effective, and petitioner's rights the " same and as effective " thereunder as before the action of the board.

At the outset of the hearing before the three arbitrators, respondent contested the jurisdiction of the arbitrators asserting the matter was not arbitrable, the exercise of discretion by the board of directors could not be interfered with by the arbitrators, and that the relief sought was beyond the power and jurisdiction of the arbitrators, but no application was made to stay the arbitration pursuant to article 84 of the Civil Practice Act.

A majority of the arbitrators, one dissenting, found that petitioner was able to attend substantially to his duties during the periods in question; that the action of the board of directors on June 27, 1956, was arbitrary; that the contract was still effective and directed the reinstatement of the petitioner.

Special Term confirmed the award.

On appeal to this court appellant argues: (1) that the award violates settled principles of equity and public policy; (2) compelling reinstatement of a key manager in a public corporation offends equity and the statutory rule entrusting corporate management to the directors; (3) the contract did not authorize the arbitrators to order petitioner's reinstatement; and, moreover, even if it had, the order would be unenforcible in equity as constituting improper interference with the internal affairs of a foreign corporation.

At the outset it must be determined if there was an arbitrable issue.

If there existed a doubt that the matter was arbitrable the statute provides a method by which such doubt could be resolved. (Civ. Prac. Act, §§ 1451, 1458.) " If a *bona fide* question arises as to the proper construction of the submission agreement, a party may raise the question by withdrawing from the arbitration." (*Matter of Bullard* v. *Grace Co.,* 240 N. Y. 388, 397.) Failing to avail themselves of the methods provided by the statute and in fact having participated in the proceedings, they have waived that question.

Moreover, parties to a contract " may agree, if they will, that any and all controversies growing out of it in any way shall be submitted to arbitration. If they do, the courts of New York will give effect to their intention." (*Matter of Marchant* v. *Mead-Morrison Mfg. Co.,* 252 N. Y. 284, 298.) Here the parties provided that " any controversy or claim arising out of or relating to this agreement" shall be settled by arbitration. " [I]t is clear that the language is all inclusive and that the parties intended that *all* controversies, including the present one, should be settled by arbitration." (*Matter of River Brand Rice Mills* v. *Latrobe Brewing Co.,* 305 N. Y. 36, 40–41.) The entire agreement in the case before us had to do with the employment, compensation, services, duties and obligations of the parties. Read in that context and against such background, the parties may reasonably be held to have contemplated arbitration on matters respecting petitioner's employment, including its termination or even his reinstatement.

Here there was no dispute that the contract had been made and the appellant did not withdraw but actually participated in the proceedings. All questions of law and fact then were for the arbitrators for there was no agreement limiting their authority. (*Matter of Spectrum Fabrics Corp.* [*Main St. Fashions*], 285 App. Div. 710, 714, affd. 309 N. Y. 709.)

The contention that upholding an award, which in effect means reinstatement of the petitioner, offends equity and the statutory rule entrusting corporate management to the directors is a most important one.

This cannot be termed such interference with the corporate management by its board of directors as to constitute a violation of the statutes applicable. Cases are legion upholding the right and power of a corporation by its board of directors or other proper person to enter or authorize contracts of employment for extended terms. If entered in good faith, in accordance with existing law, the charter and by-laws of the corporation, such contracts are valid. There is little doubt that the contract involved was for the benefit of the corporation. Just as the applicable statutes defining the powers and duties of directors of corporations (in New York, General Corporation Law, § 27; Stock Corporation Law, § 60) are not limitations on the corporate powers to make binding contracts of employment for extended terms, so the provisions for arbitration of disputes relating to such employment and the awards that may result do not offend the statutory purport. Nor does the provision for arbitration or any award made thereunder deprive the corporate board of its power to discharge its duties with

respect to the corporate affairs, albeit like any contract it thereafter narrows the choices open to the corporation.

It must be remembered the statute (General Corporation Law, § 27) does not establish an absolute or universal norm from which there can be no variation (*Clark* v. *Dodge,* 269 N. Y. 410, 414 *et seq.*). The fact that respondent is a foreign corporation is not decisive. There was an agreement to arbitrate in accordance with the rules of the American Arbitration Association and, pursuant to such rules, New York was selected as the locale for the hearing. It constituted, in effect, a consent of the parties to the jurisdiction of the Supreme Court of this State to enforce such contract. (*Gilbert* v. *Burnstine,* 255 N. Y. 348; *Matter of Gantt* [*Hurtado & Cia.*], 297 N. Y. 433, 439.)

Lastly, there is no rule of law limiting to money judgments the relief which an arbitrator may award, "even in cases where no equitable decree would be proper if the controversy between the parties were being determined by a court rather than by arbitrators." (*Matter of Freydberg Bros.* v. *Corey,* 177 Misc. 560, 561, affd. 263 App. Div. 805, reargument denied 263 App. Div. 858.)

Are there then such " potent objections " (*Gilbert* v. *Burnstine, supra*) that the award should be vacated and the judgment reversed?

It must be recognized that this court has upheld awards directing reinstatement or retention of employees (*Matter of Devery* [*Daniels & Kennedy*], 266 App. Div. 213, affd. 292 N. Y. 596; *Matter of Freydberg Bros.* v. *Corey, supra*) or enjoining proceedings to lock them out (*Goldman* v. *Cohen,* 222 App. Div. 631). Compare *Matter of Ruppert* (*Egelhofer*) (3 N Y 2d 576) where the court confirmed an award enjoining a slowdown, and the judgment was upheld on appeal.

It becomes apparent then that the distinction here, if any, must be because of the job level, for, as pointed out, employment contracts as such, and awards thereunder directing reinstatement, have been upheld. If it is also recognized that arbitration is voluntary; that the parties have elected the forum in which they wish to resolve their disputes, primarily because of the reputed promptness and finality of arbitration; and that the statute has merely added a new implement, " the remedy of specific performance, for its more effectual enforcement " (*Matter of Marchant* v. *Mead-Morrison Mfg. Co.,* 252 N. Y. 284, 293, *supra*), the objection to specific relief appears specious.

Moreover, one of the purposes of the arbitration statute was to provide remedies alternative to the courts and not limited by many of the procedural limitations inherent or acquired in

the history of the judicial process. '' The statute is intended to provide a method by which controversies may be determined speedily and without the technicalities which at times may be invoked to hinder the administration of justice. That is the benefit which those who invoke the statute expect to obtain. Sometimes the expected benefit must be weighed against possible detriment flowing from arbitration.'' (*Sandford Laundry v. Simon,* 285 N. Y. 488, 495.)

None of the grounds set forth in sections 1462 or 1462-a of the Civil Practice Act which warrant the vacating of the award is shown or claimed to exist here.

It is urged that the nature of the award by the arbitrators and any judgment which confirms it presents problems of impossibility of enforcement. The fact that courts of equity have traditionally refused to grant equivalent specific performance in actions based on contracts is cited as proof of the difficulty. The fact of the matter is that much of equity jurisdiction and relief is patterned on the assumption of the test of the adequacy of the relief at law. This has undoubtedly influenced the areas where equitable relief is denied on other substantive grounds, such as is involved here. (1 Pomeroy, Equity Jurisprudence [5th ed.], § 176; 1 Story's Equity Jurisprudence, § 33.) Hence, when there is an adequate remedy at law equity will the more quickly refrain from granting the extraordinary relief that has been historically associated with equity. But in the case of arbitration no distinction is made between these forms of relief, the dichotomy of which is historically associated with the development of our courts. The granting of specific relief in arbitration does not depend upon the inadequacy of the remedy at law or anywhere else. As already pointed out, as embodied in the arbitration statute and as recognized in our highest court, arbitration may provide relief in circumstances and on conditions which even a court has no power to grant. (*Matter of Ruppert* [*Egelhofer*], 3 N Y 2d 576.) Turning more particularly to the problem of enforcing a direction to reinstate an employee, once again that problem has already been met by the courts many times in the reinstatement of employees. (*Matter of Devery* [*Daniels & Kennedy*], 266 App. Div. 213, affd. 292 N. Y. 596, *supra*; *Matter of Freydberg Bros.* v. *Corey, supra*; *Matter of United Culinary Bar & Grill Employees,* 299 N. Y. 577.) From this point of view the question is not a new one. All that is new here is that this particular employee occupies a higher rank and greater responsibilities. This, of course, makes the question of enforcement one of more serious degree. But it does not provide any suf-

ficiently persuasive basis for distinction. So long as the courts are obligated by statute to enforce arbitration awards they should do so, absent a violation of public policy designed to prevent fraud, illegality, overreaching, or as a device to impose otherwise prohibited penalties and forfeitures. (See *Matter of Publishers' Assn. [Newspaper Union]*, 280 App. Div. 500.) "Proceedings of this kind [i.e., arbitration] are equitable in character, and the practice of equity as to relief *should* be followed. In equity proper relief is *ordinarily* granted when the facts warrant regardless of what may have been asked for." (Emphasis supplied.) (*Matter of Feuer Transp. [Local No. 445]*, 295 N. Y. 87, 92.) Moreover under clause 9 of the agreement the parties provided that any controversy, etc., should be settled by arbitration " in accordance with the rules then obtaining of the American Arbitration Association."

Section 42 of such rules provides: " The arbitrator in his award may grant any remedy or relief which he deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." Unless facts are shown to have existed before or at the time of the making of the award which would move a court of law or equity to deny enforcement of the award, such enforcement must be granted. Compare *Matter of Zimmerman* v. *Cohen* (236 N. Y. 15) where a question of waiver was involved.

Accordingly, the judgment and order should be affirmed, with costs to respondent.

VALENTE, J. (dissenting). The majority of the court today upholds an arbitration award which directs specific performance of a contract for personal services by requiring the reinstatement of petitioner-respondent for seven years in a key executive position in a publicly held New Jersey corporation. In so doing, the court departs from well-established limits on equity decrees. We dissent because neither controlling authority nor the dictates of public policy support the ruling made. The decision represents a capitulation of the powers of a court of equity to the unregulated discretion of a board of arbitration.

The matter before us poses an important question of policy which transcends the rights of the particular litigants. While it has been said that " Provisions of law applicable to judicial actions and proceedings do not necessarily apply to arbitrators " (*Matter of Penco Fabrics [Louis Bogopulsky, Inc.]*, 1 A D 2d 659); that when parties submit their controversies to arbitration, the determination of the arbitrators is final and conclusive (*Matter of Wilkins*, 169 N. Y. 494, 496); and that

awards may not be modified on grounds other than those enumerated in section 1462-a of the Civil Practice Act (*Matter of Congregation Talmud Torah of Flatbush* [*Feinstein*], 283 App. Div. 892), we believe that the Supreme Court, with its general equitable jurisdiction does not act as a mere ministerial adjunct to the arbitration tribunal, stripped of all discretion. Thus, in *Matter of Publishers' Assn.* (*Newspaper Union*) (280 App. Div. 500) we refused to enforce an award of punitive damages though the parties had expressly authorized it.

Specifically, the problem here is whether a court must, on an application to confirm an arbitration award, enter a decree of specific performance of a contract for personal services where the court could not do so were an action brought on the contract. In our opinion, the statutory machinery for the enforcement of arbitration awards contemplates the exercise of a judicial function and not a ministerial one. No judgment should issue from the court which contravenes deeply ingrained principles and rules of equity jurisprudence regarding the specific performance of contracts for personal service.

It has long been settled that a court of equity will not decree specific enforcement of contracts for personal services. (5 Corbin, Contracts, § 1204, p. 849; 28 Am. Jur., Injunctions, § 93, p. 285; *Miller* v. *Warner,* 42 App. Div. 208, 210.) That power, which courts have eschewed for two centuries, cannot be lightly given to arbitrators. The same conditions which have circumscribed the discretion of the Chancery to award specific performance in such instances must be applied to arbitration awards.

The established rule as to denial of specific performance of personal services contracts rested upon the difficulty of enforcing such decrees, the fact that the relationship in such contracts was a close personal one involving confidence and loyalty, and the refusal to decree any sort of involuntary servitude. The court in *Boyer* v. *Western Union Tel. Co.* (124 F. 246, 249) summed it up appropriately when it said: "It would be intolerable if a man could be compelled by a court of equity to serve another against his will, or if a man could be compelled to retain in his employ one he does not want; courts of equity exercise no such power and grant no such relief."

Specific performance to enforce arbitration awards is granted on the same principles that apply to enforcement of contracts. (Pomeroy, Specific Performance of Contracts [3d ed.], § 21; 4 Pomeroy, Equity Jurisprudence [5th ed.], § 1402, p. 1037; 81 C. J. S., Specific Performance, § 73; Sturges, Commercial Arbitrations and Awards [1930], § 303; Russell, Arbitration &

Award [13th ed.], p. 253, 461.) In *Matter of Publishers' Assn.* (*Newspaper Union*) (280 App. Div. 500, 507, *supra*) this court said: " The court will not lend its power to the enforcement of the kind of a decision in arbitration which it would neither allow nor enforce as the subject of an action maintained before it directly."

And in *Finsilver, Still & Moss* v. *Goldberg, Maas & Co.* (253 N. Y. 382, 392) CARDOZO, Ch. J., said: " The motion to confirm is equivalent to a suit in equity to carry into effect the terms of the agreement and the arbitration had thereunder."

Proceedings involving arbitrations have always been considered as equitable in character " and the practice of equity as to relief should be followed." (*Matter of Feuer Transp.* [*Local No. 445*], 295 N. Y. 87, 92.)

See, also, *Matter of Lipschutz* (*Gutwirth*) (304 N. Y. 58, 63); *Reconstruction Finance Corp.* v. *Harrisons & Crosfield* (204 F. 2d 366, 369–370 [2d Cir.], cert. denied 346 U. S. 854); *Matter of Pocketbook Workers Union* (14 Misc 2d 268, 270) where the court said: " it is the court that fashions the decree based on the determination of the arbitrator. (*Matter of Albert*, 160 Misc. 237.) And equity will not ' render a decree which shocks good conscience or is otherwise offensive to equity.' (*Matter of Young* [*Deschler*], 202 Misc. 811, 813.) "

While there is no express command in the statutes (Civ. Prac. Act, art. 84) that " the granting of the remedy of specific performance rests in the broad discretion of the court " (*Matter of Lipschutz* [*Gutwirth*], p. 63, *supra*), this limiting principle inheres in the judicial function exercised in the enforcement or vacatur of arbitration awards. It is for the courts to determine whether a judgment of confirmation, adding the force and prestige of the State behind the arbitral decision, will contravene well-established equitable principles and public policy. (See discussion in Statutory Arbitration Post-Award Motions — F. E. Jones, Jr., 46 Cal. L. Rev. 411–437 [1958].) The abdication of the court's equitable powers was neither necessary nor proper in the instant case, since — as Special Term recognized — if this were a suit rather than an arbitration proceeding, a court would not grant specific performance.

However, the court in this case — where damages would be a sufficient and proper remedy — approves a decree directing that a corporation continue to employ in a key management position, for an additional seven years, a man found unsuitable by the board of directors, and whose judgment and policies must either harmonize with the board or ruin the corporation.

In sustaining the instant award, the majority relies on certain decisions in which it is claimed this court upheld awards directing the reinstatement or retention of employees.

*Matter of Freydberg Bros.* v. *Corey* (177 Misc. 560, affd. 263 App. Div. 805, reargument denied 263 App. Div. 858) is not apposite or controlling. Primarily, the case involved an application to stay an arbitration and not a motion to confirm an award. The language regarding an equitable decree appeared in the opinion of the Special Term Justice. Our affirmance, without opinion, was solely a holding that the arbitration should proceed.* We did not, and could not, then pass upon the prospective award. The question of possible relief was therefore essentially academic and premature; there was no occasion to consider fully the problems of policy and judicial administration presented by an award which granted specific performance.

The other cases relied on — *Matter of Ruppert (Egelhofer)* (3 N Y 2d 576); *Matter of Devery (Daniels & Kennedy)* (266 App. Div. 213, affd. 292 N. Y. 596); *Goldman* v. *Cohen* (222 App. Div. 631) and *Matter of United Culinary Bar & Grill Employees* (299 N. Y. 577) — have one distinctive feature, which not only explains the granting of equitable relief in those instances, but marks the significant difference in the instant case. *Those cases all involved collective bargaining agreements.*

Voluntary collective bargaining agreements, including awards made pursuant to their arbitration provisions, have been held to be specifically enforcible by a court of equity. (*Schlesinger* v. *Quinto,* 201 App. Div. 487; *Goldman* v. *Cohen, supra*; *Ribner* v. *Rasco Butter & Egg Co.,* 135 Misc. 616; *Farulla* v. *Ralph A. Freundlich, Inc.,* 152 Misc. 761.) That is the rule in New York and other jurisdictions. (See Ann. 156 A. L. R., Collective Bargaining-Remedies 652, 662–678.) In fact, section 1448 of the Civil Practice Act was amended in 1940 to make it clear that labor organizations and employers could by collective agreements make contracts to arbitrate, which would be " valid, enforcible and irrevocable ".

Since a court of equity will specifically enforce a collective bargaining agreement, consistently it will similarly enforce an award made in an arbitration conducted under such an agreement. But the reasons which impelled the courts to grant the

---

* When a case is affirmed without opinion it does not mean that the Appellate Division approved the opinion of Special Term. (*Soderman* v. *Stone Bar Associates,* 208 Misc. 864, 867, affd. 3 A D 2d 680, motion for leave to appeal denied 3 A D 2d 755; *Commissioner of Welfare of City of N. Y.* v. *Jackson,* 265 N. Y. 440, 441; *E. T. C. Corp.* v. *Title Guar. & Trust Co.,* 246 App. Div. 226, 228, revd. 271 N. Y. 124, reargument denied 271 N. Y. 659.)

remedies of specific performance and injunction in collective bargaining agreements (discussed fully in *Schlesinger* v. *Quinto, supra,* and *Goldman* v. *Cohen, supra*) do not apply to an individual employment contract like the one here in question. An order for the reinstatement of a manager is subject to all the obstacles and objections equity has always recognized, and is not justified by the special considerations which make such a decree suitable and enforcible in the area to which collective bargaining applies.

In this case petitioner was employed as manager in charge of production and engineering. It is undisputed that this was a top managerial position at the highest level of policy and operations. The board of directors of the corporation found that petitioner was permanently disabled and that for a period of one year had been unable to attend substantially to his duties. The arbitrators; by a divided vote, found petitioner was able to attend to his duties and the affairs of the company, rejected the contrary determination of the directors as an abuse of discretion, and ordered petitioner's reinstatement. There can be no question that a court of equity would not compel specific enforcement of the contract. We should not do so by confirmation of an arbitration award.

We would therefore vacate the award and remit the matter to the arbitrators to assess any damages that have been sustained by virtue of the alleged breach of the contract.

BREITEL, J. P., and RABIN, J., concur with STEVENS, J.; VALENTE, J., dissents in opinion in which M. M. FRANK, J., concurs.

Judgment and order affirmed, with costs to the respondent.