**HAMILTON LIFE INSURANCE COMPANY OF NEW YORK, Petitioner-Appellee,**

v.

**REPUBLIC NATIONAL LIFE INSURANCE COMPANY, Respondent-Appellant.**

No. 349, Docket 32937.

United States Court of Appeals
Second Circuit.

Argued Jan. 23, 1969.

Decided March 12, 1969.

Anthony L. Tersigni, New York City (Herbert A. Einhorn, and Aranow, Brodsky, Bohlinger, Einhorn & Dann, New York City, on the brief), for petitioner-appellee.

Robert W. Holland, Phoenix, Ariz. (Thomas G. Nash, Jr., Dallas, Tex., Carson, Messinger, Elliott, Laughlin & Ragan, Phoenix, Ariz., and Simpson, Thacher & Bartlett, New York City, on the brief), for respondent-appellant.

Before MEDINA, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, William B. Herlands, Judge, 291 F.Supp. 225 (S.D.N.Y.1968), granting motion of appellee Hamilton Life Insurance Company of New York to compel arbitration pursuant to 9 U.S.C. § 4.[1] We find no error and affirm the judgment.

---

1. 9 U.S.C. § 4 provides:

§ 4. Failure to arbitrate under agreement; petition to United States Court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination.

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order direct-

Republic contends that it was entitled to a trial by jury on the issue of the existence of a written contract to arbitrate, that the terms of the agreement giving broad powers to the arbitrators denied it due process of law, that the agreement is invalid under the McCarran Act, and that there was no jurisdiction over it obtained in the action. Judge Herlands, in a characteristically careful and well reasoned opinion, rejected these contentions, and we agree.

On September 21, 1965 Hamilton and Republic entered into a written agreement of reinsurance, which provided that Republic would reinsure a certain percentage of the risks on group life insurance policies written by Hamilton covering civil service employees in the New York City area. The reinsurance agreement contains the following broad arbitration clause:

> 1. All disputes and differences between the two contracting parties upon which an amicable understanding cannot be reached are to be decided by arbitration and the arbitrators shall place a liberal construction upon this agreement free from legal technicalities, for the purpose of carrying out its evident intent.

2. The court of arbitrators, which is to be held in the city where the home office of CEDING COMPANY [Hamilton] is domiciled, shall consist of three arbitrators. * * *

Disputes having arisen between the parties, on July 27, 1967 Hamilton served on Republic a Demand for Arbitration which recited that by virtue of the reinsurance agreement Republic was obligated to pay Hamilton the sum of $278,023.41, representing claims paid by Hamilton and reinsured by Republic. Republic refused to proceed to arbitration, and instead instituted a number of court proceedings in the Northern District of Texas and the District of Arizona to obtain judicial relief. Hamilton was at the time in financial difficulty and is under supervision by the New York State Insurance Department.

On December 11, 1967, Hamilton commenced the present action in the District Court to compel arbitration.

## I.

Republic claims that the District Court erred in not requiring a jury trial in order to determine, as a preliminary fact, whether a written contract was made providing for arbitration of the

---

ing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be

in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

disputes which Hamilton seeks to arbitrate. Specifically, Republic maintains that the contract is really a three-party parol contract, with Financial Security Life Insurance Company the third party, and that as such the contract must have a three-party arbitration clause to permit arbitration of disputes involving the ultimate liability of the three parties.

Section 2, 9 U.S.C. provides as follows:

A written provision in any * * * contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

■ Although a frivolous or patently baseless claim should not be ordered to arbitration, a court's function in an action to compel arbitration is limited to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Procter & Gamble Independent Union of Port Ivory, N. Y. v. Procter & Gamble Mfg. Co., 195 F.Supp. 64 (E.D.N.Y. 1961), aff'd 298 F.2d 647 (2 Cir. 1962).

■ The District Court correctly concluded that to allow Republic to prove that there was an oral agreement modifying the reinsurance agreement would violate the parol evidence rule, Fogelson v. Rackfay Construction Co., 300 N.Y. 334, 90 N.E.2d 881 (1950); N.Y.General Obligations Law, McKinney's Consol.Laws, c. 24–A, § 15–301; 1A Moore's Federal Practice ¶ 0.313, and would be contrary to the express terms of the agreement, which provides:

ARTICLE XIV. AMENDMENT

This instrument contains the sole agreement between the parties hereto on the subject of group reinsurance, and it may be amended only by an instrument in writing which expresses such an intention and is signed with the same formalities as this instrument.

■ The District Court also correctly noted that there is no impediment to enforcing an agreement to arbitrate as between two parties in a dispute involving a multi-party agreement. Wilko v. Swan, 201 F.2d 439, 445 (2 Cir.), rev'd on other grounds, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Lumbermens Mutual Casualty Co. v. Borden, 268 F.Supp. 303 (S.D.N.Y.1967). Even assuming *arguendo* that a portion of the business ceded to Republic was to be retroceded to a third party, Financial Security, pursuant to an oral agreement, this would not affect the enforceability of the agreement between Hamilton and Republic to arbitrate, as between themselves, all disputes arising in connection with the business ceded by Hamilton under the reinsurance agreement, within the scope of 9 U.S.C. § 2 and § 4.

■ The court was correct in concluding that there was no bona fide issue concerning the making of the agreement for arbitration or the failure to comply therewith. Moreover, there was no right to jury trial had these issues existed, since Republic did not make a request for jury trial as required by the statute, 9 U.S.C. § 4, on or before the return day of the notice of application.

The court was therefore justified in concluding that under the facts the contract required submission to arbitration. Engineers Association v. Sperry Gyroscope Co., 251 F.2d 133 (2 Cir. 1957). See Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 412 (2 Cir. 1959), cert. dismissed 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

II.

Republic also maintains that the order of the District Court denies it due process of law in that Republic's legal defenses to arbitration are left to be decided by arbitrators who are specifically absolved of any responsibility to uphold the rule of law. Republic contends that the parties did not and could not have

intended to include such legal issues as fraud and illegality, which are themselves defenses to an attempted enforcement of an agreement to arbitrate, citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); American Safety Equipment Corp. v. J. P. Maguire & Co., 391 F.2d 821 (2 Cir. 1968); and Robert Lawrence Co., *supra.*

■ Republic's reliance upon the above cases is misplaced. Republic has not alleged that the arbitration agreement itself was induced by illegality or fraud, but rather makes these allegations with respect to the reinsurance agreement. Republic's answer states:

> The agreement set forth in paragraph "10" of the petition was fraudulently induced by the petitioner, which represented that the insurance covered by said agreement was valid and of full force and effect although petitioner knew or should have known at the inception of such agreement that such insurance business was illegal under the laws of the State of New York.

The Arbitration Act contemplates a distinction between the entire contract between the parties and the arbitration clause. While it is true that fraud or illegality in the inducement of the arbitration clause *itself* is a defense to enforcement of arbitration, the illegality, fraudulent inducement, or repudiation of the principal contract does *not* operate to nullify an agreement to arbitrate. Robert Lawrence Co. v. Devonshire Fabrics, Inc., *supra,* 271 F.2d at 409–411. As the Supreme Court stated in Prima Paint, *supra,* 388 U.S. at 406, 87 S.Ct. at 1807:

> In the present case, no claim has been advanced by Prima Paint that F & C fraudulently induced it to enter into the agreement to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement, or the

breach thereof." This contractual language is easily broad enough to encompass Prima Paint's claim that both execution and acceleration of the consulting agreement itself were procured by fraud. Indeed, no claim is made that Prima Paint ever intended that "legal" issues relating to the contract be excluded from arbitration, or that it was not entirely free so to contract.

The other cases relied upon by appellant are inapposite. In *American Safety Equipment, supra,* the court held that as a matter of accommodating the policies of the Sherman Antitrust and Arbitration Statutes, the remedy provided by the antitrust laws is of a character inappropriate for enforcement by arbitration. No such considerations are present before us here.

Nor did the District Court deny appellants a forum for determining if a written agreement exists for arbitrating the above "jurisdictional" questions. Instead the court explicitly found that the "jurisdictional" requisites were present, i. e. that the parties had made a binding agreement to arbitrate, and that the arbitration clause was broad enough to cover the defenses raised. *Robert Lawrence Co., supra,* 271 F.2d at 409.

Republic's attack on the arbitration clause as enabling a party with superior economic power to close the door of the courts to a weaker party is a little hard to digest, coming as it does from the party which was the author of the clause in the contract in question, a party moreover which has sought to delay arbitration so long against a failing insurance company whose condition would be vastly helped by arbitration proceedings and an award.

### III.

Appellant further contends that application of the Arbitration Act is precluded by the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq.[2]

---

2. The relevant provisions are as follows:
   § 1011. Declaration of policy
   Congress declares that the continued regulation and taxation by the several

States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to

■ The McCarran Act does not re-create a "broad field for state regulation of the insurance industry free from federal intervention," as appellant argues. Instead it was a reaction to United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944) (which reversed the pre-existing rule that the business of insurance was not commerce), and attempted to return primary responsibility for insurance regulation to the states. Monarch Life Ins. Co. v. Loyal Protective Life Ins. Co., 326 F.2d 841 (2 Cir.), cert. denied 376 U.S. 952, 84 S.Ct. 968, 11 L.Ed.2d 971 (1963). Under the terms of the Act, only when a state has not acted, would federal legislation become effective.

■ The McCarran Act does not, as appellant submits, exempt the business of insurance from the coverage of all federal statutes which do not specifically state that their provisions are applicable to insurance. As the District Court correctly noted:

The plain and unambiguous statutory language is persuasive evidence that the McCarran-Ferguson Act was not intended to preclude the application of these federal statutes to insurance *unless* they invalidate, impair or supersede applicable State legislation regulating the business of insurance.

■ To avail itself of the McCarran Act, then, appellant must show that the application of the Federal Arbitration Act would "invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b).

■ It is quite plain that arbitration statutes, including those of Texas and New York, are not statutes regulating the business of insurance, but statutes regulating the method of handling contract disputes generally. As the Supreme Court has recently said, in rejecting the claim that the McCarran Act precluded application of federal securities regulation to merger of Arizona insurance companies, "Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the 'business of insurance' does the statute apply * * * [W]hatever the exact scope of the statutory term [business of insurance], it is clear where the focus was—it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the 'business of insurance.'" S. E. C. v. National Securities, Inc., et al., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (Jan. 27, 1969).

Neither the Texas Arbitration Act nor the New York Arbitration Act is a law regulating the business of insurance within the meaning of the McCarran Act.[3]

---

the regulation or taxation of such business by the several States.

§ 1012. Regulation by State law; Federal law relating specifically to insurance; * * *

(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) No Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically .relates to the business of insurance: *Provided,* That after June 30, 1948, the Act of July 2,

1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

3. The District Court properly rejected appellant's contention that the law of Texas had been "impaired" within the meaning of 15 U.S.C. § 1012(b). The Texas General Arbitration Act in force at the time the agreement in issue was entered into, September, 1965, rendered enforceable only written agreements to submit an existing controversy to arbi-

## IV.

Appellant's final contention is that the District Court never obtained jurisdiction *in personam* over it since service of process in Texas was insufficient.

In Farr & Co. v. Cia Intercontinental de Navegacion, 243 F.2d 342 (2 Cir. 1957), this court held that the 1954 amendment to the Federal Arbitration Act provided that service of petitions to compel arbitration was governed by the Federal Rules of Civil Procedure [4] and that under Rule 4(d) (7) Congress made available the manner of service of the state in which the petition was brought.[5]

tration. 10 Vernon's Civil Stats. (1959 ed.) Arts. 224–238. Agreements to arbitrate future disputes were not covered by this statute, and were unenforceable under the old common law rule. See Dougherty and Graf, Should Texas Revise Its Arbitration Statutes?, 41 Texas L.R. 229 (1962) ; Texas Development Co. v. McGough Bros., 165 F.2d 276 (5 Cir. 1947). Appellant has not shown any such "regulation" by Texas as would render existing federal law inapplicable.

Appellant alternatively contends that application of the Arbitration Act "impaired" New York law regulating the business of insurance, specifically its arbitration statute, N.Y. CPLR § 7501 et seq., which provides as follows:

§ 7501. Effect of Arbitration Agreement

A written *agreement to submit any controversy thereafter arising* or any existing controversy *to arbitration* is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award. In determining any matter arising under this article, the court shall not consider whether the claim with respect to which arbitration is sought is tenable or otherwise pass upon the merits of the dispute.

§ 7503(a). Application to compel arbitration; stay of action

A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration. Where there is no substantial question *whether a valid agreement was made or complied with* * * * the court shall direct the parties to arbitrate. Where any such question is raised, it shall be *tried forthwith in said court.* [Emphasis added.]

Under the New York statute, appellant argues, the issue of the fraud or illegality of the contract in question is a matter for the court to decide rather than the arbitrator, and to require arbitration under the Federal Arbitration Act is an "impairment" of the New York law. We do not agree. It is not clear that the fraud issue is one for the court alone. In Matter of Exercycle Corp., 9 N.Y.2d 329, 214 N.Y.S.2d 353, 174 N.E.2d 463 (1961), the court stated that questions as to the validity of the contract at common law were for the arbitrators; however, issues of invalidity involving matters of public policy, such as fraud or duress, should be retained by the courts. However, in 1962 the New York legislature changed the wording of the prior arbitration statute and required the courts to consider only "whether a valid agreement [to arbitrate] was made." Civil Practice Act, § 1450 required the court to consider whether there was a "substantial issue as to the making of the contract." Subsequent cases under the new statute indicate that the restrictive view taken in *Exercycle* is no longer the law in New York, and that the distinction recognized in the Federal Arbitration Act, see Robert Lawrence Co., *supra*, between fraud in the inducement of the arbitration clause itself and fraud with respect to the contract generally, has been adopted in New York. See Matter of Amphenol Corp., 49 Misc.2d 46, 266 N.Y.S.2d 768 (N.Y.Co.1965), aff'd mem., 25 A.D.2d 497, 267 N.Y.S.2d 477 (1st Dept. 1966).

4. 9 U.S.C. § 4 provides that "[s]ervice [of a petition directing arbitration] shall be made in the manner provided by the Federal Rules of Civil Procedure."

5. Rule 4(d) (7) provides that service upon a foreign corporation is sufficient if "in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state." Rule 4(f) as originally promulgated, permitted service of process within the state, and extraterritorial service only when authorized by statute. The 1963 amendment, however, states that all process "may be served anywhere within the territorial limits of the state in which the district court is held, and, *when authorized by* * * * *these rules,* be-

 The District Court held that personal service upon appellant in Texas was "unquestionably valid" under New York law which holds that "consent to jurisdiction includes consent to service by any method consistent with due process." Petrol Shipping Corp. v. Kingdom of Greece, 360 F.2d 103, 107 (2 Cir.), cert. denied 385 U.S. 931, 87 S.Ct. 291, 17 L.Ed.2d 213 (1966).

Appellant argues, however, that the submission in *Petrol Shipping* was based upon the express provision that arbitration takes place in New York, with the statement, "for the purpose of enforcing any award, this agreement may be made a rule of the Court." Similarly in *Farr & Co., supra,* the arbitration agreement directed the arbitration to take place in New York, adding that "this submission may be made a rule of Court by either party."

 These distinctions do not, however, require a different result here. The arbitration clause states that arbitration is to be "held in the city where the home office of CEDING COMPANY [Hamilton] is domiciled," which was and is New York City. Under New York law, the making of an agreement providing for arbitration in New York confers *in personam* jurisdiction on the courts to enforce the agreement and enter judgment on an award. As the court said in Samincorp So. Amer. M. & M. Corp. v. Tikvah Min. Co., 43 Misc.2d 27, 250 N.Y.S.2d 151 (Sup.Ct.N.Y.Co.1964), at 153:

> Petitioner duly requested that New York be selected as the locale for the arbitration hearings * * *. Respondent thus voluntarily sanctioned the designation of New York as the contractual arbitration forum, and the courts of this state have jurisdiction to enter judgment on an award of an arbitration proceeding held in New York (CPLR 7501). Accordingly, respondent must be deemed to have consented to the jurisdiction of the courts

yond the territorial limits of that state." [Emphasis added.] It is clear, after *Farr*

of New York to enforce the subject contract. (see Matter of Staklinski [Pyramid Electric Co.], 10 Misc.2d 706, 172 N.Y.S.2d 224, aff'd 6 A.D.2d 565, 180 N.Y.S.2d 20, aff'd 6 N.Y.2d 159, 188 N.Y.S.2d 541, [160 N.E.2d 78]).

See also S. M. Wolff Co. v. Tulkoff, 9 N.Y.2d 356, 214 N.Y.S.2d 374 (1961); Gilbert v. Burnstine, 255 N.Y. 348, 174 N.E. 706, 73 A.L.R. 1453 (1930).

 Since consent to arbitration in New York provides a basis for the court's exercise of power, the court obtained jurisdiction over appellant by personal service on it in Texas. *Petrol Shipping, supra.*

Judgment affirmed.

& Co., *supra,* that Rule 4(d) (7) is such an authorization.