■ In the Matter of the Arbitration between MYRON A. COLER et al., Appellants, and GCA CORPORATION, Respondent.— Order and judgment (one paper), Supreme Court, New York County, entered on August 24, 1971, affirmed. Respondent shall recover of appellants $30 costs and disbursements of this appeal. The application, denied at Special Term, was to stay arbitration because the relief which is sought at arbitration is to rescind the contract. We hold that, regardless of the possibility that the ultimate result of the arbitration might be vitiation of the very contract under which the arbitration will have taken place — note the use of the future perfect tense — the contract will have remained viable a sufficient period of time to sustain the arbitration. Our dissenting brother relies upon *Matter of Wrap-Vertiser Corp. (Plotnick)* (3 N Y 2d 17) as authority for the proposition that a request for rescission *ipso facto* dictates a preliminary trial of that issue to determine the validity of the contract before arbitration may take place under it. But *Wrap-Vertiser,* it has been written cogently, " appears to be a *sui generis* case, where an arbitration clause was so narrow and restrictive in its scope that the question of fraudulent inducement was not allowed to come within its purview. However, where the arbitration clause is broad, *Matter of Wrap-Vertiser* is not apposite." (*Matter of Fabrex Corp. [Winard Sales Co.]*, 23 Misc 2d 26, 27.) The arbitration clause** we find in the case before us is sufficiently broad to cover the relief here sought. Also see CPLR 7501, enacted after *Wrap-Vertiser* was written, and, as to the effect of which, see *Hamilton Life Ins. Co.* v. *Republic Nat. Life Ins. Co.* (408 F. 2d 606). And, further, distinguishing *Wrap-Vertiser, Matter of Amphenol (Microlab)* (49 Misc 2d 46, aff. without opinion 25 A D 2d 497). " When viewed against the factual background of the case, the arbitration clause contained in the agreement between the parties encompasses the controversy which has arisen and that such controversy is a proper subject for arbitration." (*Matter of Vogel [Lewis]*, 19 N Y 2d 589,

---

** Agreement, article X: " Any controversy or dispute which may arise between the parties and which shall not be adjusted by mutual agreement, shall be so settled or adjusted with final effect by arbitration ".

590.) "Fraud does not make a contract void, merely voidable. The parties may provide for the arbitration of such questions as would give one of them the right to rescind." (*Krumbeim & Sons* v. *Winola Silk Mills*, N. Y. L. J., April 4, 1955, p. 6, col. 7.) And the parties here have so provided. Concur — Markewich, Nunez and Murphy, JJ.; Capozzoli, J., concurs on constraint of *Matter of Amphenol* (*Microlab*) (25 A D 2d 947). McGivern, J. P., dissents in the following memorandum: The GCA Corporation, in its demand for arbitration, stated "The relief sought is *rescission of the agreement and restitution* of amounts paid by GCA Corporation thereunder and the damages incurred by GCA Corporation." (Italics supplied.) Returning to fundamentals, the commonly accepted notion of the word "rescind" is to "cut off or remove", "to abrogate; annul; cancel". (Cf. Webster's New International Dictionary, 2d ed.) And in the legal lexicon, rescission means the voiding of a contract *ab initio* and the restoration of the parties to *statu quo ante* — the same position occupied by the parties before making the contract. In logic, I would think, if the right to arbitrate rests on a contract, and the contract is extinguished and no longer exists, then, exit the right to arbitrate. And I would also think that still is the law of New York, as enunciated by the Court of Appeals, per Van Voorhis, J., in *Matter of Wrap-Vertiser Corp.* (*Plotnick*) (3 N Y 2d 17, 19–20, revg. 2 A D 2d 346) : "If he were seeking recission, none of the items in his arbitration demand could be arbitrated until the issue of rescission had been determined in the courts   *   *   *   Even if he had rescinded or asked for rescission, such an issue would have had to have been decided in court before it could be known that an agreement existed supplying a foundation for the jurisdiction of the arbitrators." Thus, with these words, the Court of Appeals stayed an arbitration, the demand for which was found in the following words: "1. Damages for breach of contract arising from fraud and misrepresentation inducing claimant to enter into the contract." A fortiori, the arbitration here must be stayed, for the instant demand reads: "The relief sought is rescission of the agreement and restitution of the amounts paid by GCA Corporation thereunder". I am aware of contrary cases, but I am more impressed by the iron logic of the *Wrap-Vertiser* opinion; and the latest text on the subject, by a distinguished jurist, tilts in the same direction. Compare, Eager, Arbitration Contract and Proceedings (§ 28, p. 84) : "1. The existence or validity of the arbitration agreement itself is not properly referable to arbitration. Where it is alleged and there is a prima facie factual showing that an agreement for arbitration is itself invalid or voidable by reason of having been induced by alleged misrepresentation, fraud or duress, the issues with respect to the alleged invalidity or avoidability of the agreement, if timely and properly raised, must be determined by the court." The application of the *Wrap-Vertiser* doctrine is even more compelling in the instant case, because in the *Wrap-Vertiser* case, rescission was not technically requested. The injured party sought to stand on the contract and recover damages for breaches subsequent to the contract. Here, rescission is specifically asked for. And the application for a stay of arbitration was granted in the *Wrap-Vertiser* case even though the arbitration clause covered any question "as to the *validity*, interpretation or performance of the agreement". The term "validity" covers a lot of territory, even embracing the voidability of a contract. (Cf. Burke, J., dissenting opinion, *Wrap-Vertiser*, 3 N Y 2d 17, 20.) Thus, it seems to me to be anomalous for the respondent herein to reject the contract, request its extinction, and at the same time, seek to come within the umbrella of its provisions. And I find here no valid basis for finding a divisibility of agreements, upon which alone there could be any justifica-

tion for a contrary result. That specific provision for such divisibility could be made is not to be disputed, but that is something else. In the instant case, the applicant has not elected to stand upon his contract. He would destroy it. The majority opinion's reliance upon *Matter of Fabrex Corp. (Winard Sales Co.)* (23 Misc 2d 26, 27), decided at Special Term, fails to give adequate recognition to the actual facts therein. That court, while it did broadly in its dicta discuss the effect of a claim of fraud in the inducement upon a broad arbitration clause, noted: "Moreover, while the buyer alleges fraud in the inducement, a reading of the complaint and accompanying affidavits indicates that the alleged fraud relates *solely* to the question of *performance* under the contracts". (Italics supplied.) Insofar as the majority opinion reaches for support by citing *Hamilton Life Ins. Co.* v. *Republic Nat. Life Ins. Co.* (408 F. 2d 606) it must be noted that in *Hamilton Life,* the Federal Arbitration Act and not the New York arbitration law was involved. The District Court, Herlands, J., in *Hamilton Life* (291 F. Supp., 225, 233–234) declared that fraud in the inducement is an arbitrable issue under Federal law, but also expressly recognized that the New York law in this respect "is not entirely clear". And this lack of clarity was confirmed by the Circuit Court in footnote 3, *Hamilton Life (supra,* p. 612). See also: *Prima Paint* v. *Flood & Conklin,* 388 U. S. 395, 400 and *Lawrence Co.* v. *Devonshire Fabrics,* 271 F. 2d 402, 410, cert. dsmd. 364 U. S. 801, where the Court of Appeals stated (p. 412): "We note that were we compelled to apply New York law to the problems involved in this case [i.e., whether fraud in the inducement is an arbitrable question], we would have been forced to arrive at a contrary conclusion. * * * the pattern and substance of New York law appears to be different than what we have found the federal law to be. This seems to have been made clear in the 1957 decision of the New York Court of Appeals in *Matter of Wrap-Vertiser Corp. (Plotnick),* 3 N Y 2d 17". In short, it is submitted that the rule in *Wrap-Vertiser* continues to be the applicable rule in New York and must be followed unless and until overruled by the New York Court of Appeals. A claim for rescission or damages based on fraud in the inducement must be "decided in court before it could be known that an agreement existed supplying a foundation for the jurisdiction of the arbitrators" (3 N Y 2d at p. 20). As for the contrary cases, including the dicta in *Fabrex,* with the greatest deference, I suggest they may be erroneous. In this view, I am not alone. (*Cf. Rodgers* v. *Feldman,* CCH Fed., Sec. L, Rep. '64–'66 Decisions Transfer Binder, par. 91,580.) Matter of *Vogel* v. *Lewis* (19 N Y 2d 589, 590, cited by the majority, affirming a split Appellate Division, 25 A D 2d 212), did not involve any question of attempted rescission and whatever it stands for, is not a holding on the point before us. Actually, the case involved dissension in a closed corporation, and the Court of Appeals, in its laconic affirmance, was careful to delimit its approval by saying: "We *decide only* that, when viewed against the factual background of the case, the arbitration clause contained in the agreement between the parties encompasses the controversy". (Italics supplied.) Nor is there any significance in the fact, as claimed by the majority, that CPLR 7501 was subsequent to *Wrap-Vertiser,* because such changes as were enacted in this section have no bearing on the present controversy. (See Practice Commentary to CPLR 7501, McKinney's Cons. Laws of N. Y., Book 7B.) *Krumbein & Sons* v. *Winola Silk Mills* (N. Y. L. J., April 4, 1955, p. 6, col. 7), a Special Term disposition also relied upon in the majority opinion, antedates *Matter of Wrap-Vertiser* and if awry as a precedent, will not improve with age. Furthermore, this Special Term opinion concerned a

much broader arbitration clause embracing "All controversies arising out of or *relating to this contract*" (italics supplied); and involved were claimed warranties covering the sale of textiles, and issues based on breach of contract arising subsequent to the making of the contract. The learned author of the opinion noted, immediately after the portion of his opinion quoted by the majority, "The parties may provide for the arbitration of such questions as would give one of them the right to rescind". To that I say "Amen", but unfortunately, in the case at hand, the parties did not so provide. And since the right to arbitrate presupposes the existence of a valid and enforceable contract, this latter question must first be determined. Lastly, I am not impressed by the fact that GCA Corporation found no cause for complaint until two days prior to the date upon which the first installment payment was due, and one year after the making of the contract, at which time it is indicated depressed market conditions rendered the deal less attractive. And GCA has never supplied, despite repeated demands, chapter and verse as to what misrepresentations the petitioners allegedly made.