James A. **BRUNO**

v.

**PEPPERIDGE FARM, INC.**

Civ. A. No. 38486.

United States District Court
E. D. Pennsylvania.

Aug. 10, 1966.

Alexander Schamban, Philadelphia, Pa., for plaintiff.

Lewis H. Van Dusen, Jr., David P. Bruton, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

John W. Lord, Jr., District Judge.

This action is based on the alleged breach and improper termination of a franchise agreement between the plaintiff, James A. Bruno, and the defendant, Pepperidge Farm, Inc. The parties were previously before this Court in the same matter. However, at that time, diversity jurisdiction was not properly set forth. (James A. Bruno v. Pepperidge Farm, Inc., Civil Action No. 38486, filed Feb-ruary 25, 1966). That defect has since been cured.

The matter is presently before the Court on the defendant's motion for dismissal or, in the alternative, for a stay of all proceedings pending arbitration pursuant to the franchise agreement. The plaintiff resists arbitration, asserting that the alleged breach deprived the defendant of the right to invoke the arbitration clause.

## FACTS

On May 25, 1962, the plaintiff and the defendant entered into a written agreement under which the plaintiff was to enjoy an exclusive franchise for the sale and promotion of the defendant's products throughout a designated geographic area. The plaintiff asserts that he acquired the franchise by paying the prior franchise holder $5,500.00 with the consent and approval of the defendant. The alleged breach occurred when, according to the complaint, the defendant assigned a portion of plaintiff's territory to another dealer without the plaintiff's knowledge or consent.

The termination is alleged to have been improper due to the manner in which it was effected. The plaintiff complains that prior to the official termination, the defendant engaged in surreptitious negotiations with three other persons, arranging to sell to each of them one-third of plaintiff's franchise. Moreover, the notice, when given, was unreasonable in that it arrived only two days prior to the effective termination date. This short notice is alleged to have had two adverse effects. First, it is asserted that the plaintiff was thereby deprived of the profits that he would have made during a reasonable notice period—thirty days, in his judgment. Second, it resulted in an additional loss, since he was thereafter unable to market the $500.00 worth of merchandise in stock at the time of termination.

For the alleged breach, the plaintiff demands an accounting. For the improper termination, he demands damages in the amount of $11,950.00 consisting of

(1) the alleged value of the franchise ($10,750.00), (2) the loss of profits resulting from the short notice ($700.00), and (3) the value of the goods in stock at the time of termination ($500.00).

The defendant contends that the plaintiff's rights are confined to the franchise agreement which provides for arbitration as to the value of the franchise and awards an additional premium of 25%. Moreover, the defendant asserts that the premium was intended by the parties to constitute liquidated damages for any and all breaches by the defendant. Further, it is argued that no notice was required under the agreement beyond that given, for the reason that a notice period is conspicuously absent in the paragraph under which termination was had.

Finally, the defendant asks that the complaint be dismissed for the reason that the aggregate of plaintiff's claims do not satisfy the jurisdictional amount necessary to maintain an action in this Court. It arrives at this conclusion by assigning a value to the franchise of $3,200.00, subtracting this figure from the amount claimed ($10,750.00) and adding the $1,200.00 alleged to have been lost as a result of the improper termination. The maximum amount recoverable then, the defendant points out, would be $8,-750.00, clearly below the jurisdictional requisite.

Plaintiff's demand for an accounting for the alleged franchise infringement is disposed of by calling attention to the absence in the complaint of any intimation as to the territory involved, the duration of the alleged infringement or of the damages purportedly accruing.

## DISCUSSION

### I—Arbitration

Paragraph nineteen of the franchise agreement is clear and unequivocal. Its relevant portion reads as follows:

"Upon termination pursuant to this paragraph the Bakery [the defendant] will pay to the distributor [the plaintiff] a sum equal to the fair market value of this franchise on the termination date plus 25% of such value, such value to be determined either by agreement between [the parties] or, *if they shall be unable to agree, by three arbitrators, one of whom shall be chosen by the Bakery and one by the Distributor and the third by the first two chosen.*" (Emphasis supplied.)

There can be no doubt that the parties intended that the value of the franchise be determined by arbitration in the event that they were unable to agree. The plaintiff asserts that its fair market value is $10,750.00. The defendant contends that is worth only $3,-200.00. Clearly the matter is arbitrable under the terms of the agreement.

This Court does not agree with the plaintiff that the defendant's conduct estops it from demanding compliance with the arbitration clause. It not only assumes facts which are as yet unestablished; more importantly, it strikes at the heart of the federal policy in favor of arbitration of disputes. If a recalcitrant party could avoid his previous agreement by the simple expedient of calling upon the general equity powers of the court, the federal policy in favor of liberal interpretation and application of arbitration clauses would be too easily frustrated.

The Federal Arbitration Act, 9 U.S.C.A. § 1 et seq, to which the agreement is subject (Cf. Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2 Cir. 1959), cert. granted 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, cert. dismissed by stipulation 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); Metro Industrial Painting Corp. v. Terminal Const. Co., 287 F.2d 382 (2 Cir. 1961), cert. denied 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961)), was designed to avoid delays in the settlement of disputes. Cargo Carriers v. Erie & St. Lawrence Corp., 105 F.Supp. 638 (W.D.N.Y. 1952). Section 3 thereof reads as follows:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to ar-

bitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

This Court is satisfied that the issue here involved, the value of the franchise, is referable to arbitration both under the agreement and within the meaning of the *Federal Arbitration Act, supra*. The defendant duly applied for the stay in conformance with the Act. Cf. Radiator Specialty Co. v. Cannon Mills, Inc., 97 F.2d 318, 117 A.L.R. 299 (4 Cir. 1938). It will be granted.

■ However, the issue as to whether the defendant infringed the plaintiff's franchise right is another matter entirely. In any dispute involving the interpretation of an arbitration clause, it is the court's primary duty to ascertain whether the matter at issue was intended to be included therein. See Lodge No. 12, Dist. No. 37, International Association of Machinists v. Cameron Iron Works, 257 F.2d 467 (5 Cir. 1958), cert. denied 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed. 2d 110 (1958); International Union, United Automobile Aircraft v. Benton Harbor Malleable Industries, 242 F.2d 536 (6 Cir. 1957). This, in turn, depends upon the intent of the parties as it appears from the language used, its context within the instrument, and the circumstances surrounding its formation and execution.

An examination of these various factors militates strongly against concluding that the provision in question was intended by the parties to constitute the plaintiff's sole and exclusive remedy. The clause, by its express terms, is limited to valuation of the franchise. It is contained only in paragraph nineteen of the agreement, one of the three provi-

sions relating to termination of the franchise, and it is operative only in the event of termination without cause. Under these circumstances, it would be unreasonable to surmise that it was intended to function beyond its rather limited scope.

The authorities cited to the Court in support of the defendant's position have been carefully examined and found to be inapposite. In Necchi Sewing Machine Sales Corp. v. Sewline Co., 194 F.Supp. 602 (S.D.N.Y.1960) the court was confronted with a very broad arbitration clause which provided that "All matters, disputes or disagreements arising out of or in connection with this agreement shall be finally settled * * *" by arbitration. The distinction between the agreement in *Necchi* and the case before the Court is too obvious to warrant discussion.

The same may be said for Saucy Susan Products, Inc., v. Allied Old English, Inc., 200 F.Supp. 724 (S.D.N.Y.1961), also cited by the defendant. The clause involved in that case was set off in a separate paragraph entitled "12. *Arbitration*", and included within its terms "Any controversy or claim arising out of or relating to [the] agreement *or the breach thereof * * *"*. (Emphasis supplied.) In the case before the Court the term "breach" does not appear in the agreement, and all references in the arbitration clause are to the paragraph in which it is contained—TERMINATION OF FRANCHISE WITHOUT CAUSE.

■ The Court is aware of the danger of allowing a party to avoid arbitration by merely casting his complaint in tort. Cf. Saucy Susan Products, Inc. v. Allied Old English, Inc., supra. Where, however, the party has not agreed to have his tort claim arbitrated the argument is inapplicable. For despite the liberality with which arbitration provisions are interpreted, the courts will not read into an agreement a matter clearly beyond its scope. "* * * [A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed

to so submit." United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) ; see also John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) ; Refinery Employees Union v. Continental Oil Co., 268 F.2d 447 (5 Cir. 1959), cert. denied 361 U.S. 896, 80 S.Ct. 199, 4 L.Ed.2d 152 (1959).

## II—*Liquidated Damages*

Much the same principles are applicable to the defendant's assertion that the 25% premium provision was intended to operate as a liquidated damages clause. In support of this contention, the defendant directs the Court to the concluding sentence of paragraph nineteen. It reads: "termination pursuant to this paragraph shall operate to release all rights and obligations *hereunder* of both the Bakery and the Distributor * * *." (Emphasis supplied.)

The defendant reasons that the premium provision must have been a liquidated damages clause in view of the fact that paragraph eighteen, the only other provision allowing the defendant to terminate the franchise, contained neither a compensation nor a premium provision.

The Court does not agree with this reasoning. It suggests that important contractual rights may be divested by implication without prior express agreement thereto. In other words, by failing to expressly declare that a premium provision is not intended to function as a liquidated damages clause, one has impliedly agreed to its operation as such.

In order to find for the defendant on this issue, the interpretation it seeks to establish would have to emerge with considerably more clarity than the Court's examination of the clause indicates. Without more, it is clear that the only right relinquished under paragraph nineteen of the agreement was the right to litigate the issue of valuation of the franchise. Beyond that, it is ineffective with regard to the plaintiff's other rights under the contract.

Liquidated damage clauses are accepted as a necessary part of the substantive law of contracts, and they will be upheld so long as the "amount fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused * * * is one that is incapable or very difficult of accurate estimation." Restatement of Contracts, § 339(1) (1938). The clause in question fails to satisfy either of these essentials. For apart from the fact that it could easily be determined how much the defendant benefited through infringement of the franchise, it is indeed doubtful whether the 25% premium would be considered to be a reasonable forecast of just compensation. The defendant asserts that the value of the franchise is no more than $3,200.00. The premium, therefore, would amount to $800.00. When considered in light of the assertion by the plaintiff that his monthly profit amounted to $700.00, the adequacy of the premium of $800.00 is subject to serious question.

However, it is the intention of the parties that controls. See generally 3 Williston, Contracts § 778 et seq., (rev. ed. 1936, Supp.1957). In this case it is unnecessary to resort to generalities in the law of contracts. The provision speaks for itself. It implies that the only rights relinquished are those which would otherwise exist for termination without cause. The term "hereunder," contained in the clause and having as its natural reference the topical heading "Termination of Franchise Without Cause", clearly limits its effect. Moreover, each of the termination paragraphs conclude with the same wording, further weakening the argument that its presence in the premium clause operated beyond its immediate context.

In accordance with the foregoing, it is the judgment of this Court that the clause in question was not intended by the parties to function as a liquidated damages clause, and it will not be treated as such.

### III—*Inadequacy of Jurisdictional Amount*

This then leaves us with the defendant's assertion that the plaintiff has failed to satisfy the jurisdictional amount requisite to maintaining an action in this Court.

It will be recalled that the plaintiff asserts that the termination notice was unreasonable. It will be unnecessary to decide this issue now, since the defendant will concede the point for purposes of advancing his motion. However, even if it be conceded that the notice was unreasonable the maximum amount recoverable therefor is $1,200.00. That is, the $700.00 which the plaintiff would have earned during a reasonable notice period, and the $500.00 lost as a result of not being able to market the defendant's products which were in stock at the time of termination.

■■■ Although it is unnecessary, under the federal rules, to state with any degree of specificity the circumstances underlying one's cause of action, or the exact amount in controversy, where it appears to a legal certainty that the claim is really for less than the jurisdictional amount the complaint must be dismissed. St. Paul Mercury Indemnity Co. v. Red Cab Company, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Horton v. Liberty Mutual Insurance Company, 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed. 2d 890 (1961). The plaintiff argues that the claim for unlawful infringement may itself exceed the jurisdictional requirements of this Court. He asserts, however, that inasmuch as the records are all within the control of the defendant, it is impossible to establish with any degree of certainty the actual amount to which he is entitled.

The complaint in this action was filed on July 13, 1965. The defendant's motion for dismissal or for a stay of proceedings followed on August 4, 1965. Apparently, the parties have not been able to engage in fruitful discovery up until the present time. Otherwise, the Court assumes that the plaintiff's complaint would have been amended accordingly.

■■■ In the interest of maintaining the jurisdictional prerequisites to actions in this Court, and in an effort to provide the plaintiff with sufficient time within which to discover the necessary facts surrounding the claim of unlawful infringement, the Court makes the following order. The plaintiff shall have ninety (90) days from this date to employ the rules of discovery to ascertain the the amount involved under Count I of his complaint. During this period the Court will withhold passing on the adequacy of plaintiff's claim to support an action in this Court.

And now, this 10th day of August 1966, it is ordered that the trial of this action be stayed until arbitration be had respecting the value of the franchise; it is further ordered that the plaintiff shall within ninety (90) days hereof inform the Court by affidavits, depositions or other appropriate means of any evidence which he could produce at trial regarding the extent of damages claimed in this action.

And it is so ordered.