**STARR ELECTRIC COMPANY, INC., Petitioner,**

v.

**BASIC CONSTRUCTION COMPANY, Respondent.**

No. C–81–623–WS.

United States District Court,
M.D. North Carolina,
Winston-Salem Division.

Jan. 15, 1982.

On Petition to Compel Arbitration
March 4, 1982.

On Motion for Injunction and Stay
Pending Appeal June 4, 1982.

C. Allen Foster, Donald G. Sparrow and Richard D. Conner, Greensboro, N.C., for petitioner.

John B. Taylor and Robert J. Greene, Jr., Charlotte, N.C., and Thomas H. Asselin and Thomas Richelo, Atlanta, Ga., for respondent.

GORDON, Chief Judge.

This petition is brought pursuant to 9 U.S.C. § 1 *et seq.*, *Arbitration*. Petitioner ("Starr") is a North Carolina corporation. Respondent ("Basic") is a Virginia corporation with its principal place of business in Virginia. Jurisdiction is based on the diversity of the parties and an amount in controversy of over $10,000.00 has been alleged.

The facts in this matter are as follows. On May 8, 1978, Basic contracted with a third party to construct a building in Winston-Salem, North Carolina. Article 7.9.1 of the General Conditions of the contract contained an arbitration clause requiring that all claims or disputes arising out of the contract be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.

On June 21, 1978, Basic subcontracted the electric work on the building to Starr. The subcontract contained a typed appendix that incorporated the General Conditions of the contract between Basic and the third party, including the broad arbitration clause. The typed appendix incorporates by reference the contract between Basic and the third party on four occasions.

Disputes subsequently arose between Basic and Starr. Starr sought to have the disputes arbitrated by filing a Demand for Arbitration with the American Arbitration Association on May 27, 1981. (Petitioner's Exhibit A). Basic refused to submit to arbitration, denying the existence of any agreement to arbitrate and raising several defenses to the actual claim itself that are of a substantive nature.

On October 6, 1981, Starr petitioned this Court pursuant to 9 U.S.C. § 4 for an order compelling Basic to submit to arbitration. On October 9, 1981, Basic was served with the petition and summons. On October 28, 1981, Basic answered the petition. On November 2, 1981, Starr moved that there be immediate consideration of their Motion to Compel Arbitration pursuant to Local Rule 21. On November 6, 1981, Basic demanded a jury trial as to all issues so triable. Starr then moved to have the request for jury trial struck.

For the reasons stated below it is concluded that Starr's motion to compel arbitration should be DENIED at this juncture and that Starr's motion to strike Basic's demand for a jury trial should be GRANTED.

In order to determine whether Starr is entitled to relief under 9 U.S.C. § 4, the Court must decide first whether the subcontract between Starr and Basic evidences a transaction in "commerce" within the meaning of 9 U.S.C. § 1. The criteria for such a contract are set forth in *C.P. Robinson Construction Company v. National Corp. for Housing Partnerships*, 375 F.Supp. 446, 451 (M.D.N.C.1974). These criteria include, in general, trade between citizens of the several states and in particular, "purchases of large quantities of building materials and fixtures from out-of-state suppliers." *Id.* at 451. Starr has produced an affidavit listing over forty purchase orders for building supplies from out-of-state suppliers that were used on the building in Winston-Salem. (Affidavit of Richard Kennedy filed November 2, 1981.) Clearly the subcontract between Starr and Basic comes under the coverage of Title 9.

Having made this threshold determination, an examination of the agreement between Basic and Starr is in order to decide whether there was an agreement to submit the dispute in question to arbitration. The Court's examination is to be limited solely to the question of whether such an agreement is present. *Lowry & Co. v. S.S. Lemoyne D'Iberville*, 253 F.Supp. 396 (S.D.N.Y.1966). The Court is not to look to the actual merits of the claim to be arbitrated. *Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711 (7th Cir. 1967).

If the making of the agreement to arbitrate is in issue, then the Court cannot grant an order to compel arbitration but rather must proceed to trial on that issue. 9 U.S.C. § 4. If there exists a question of fact as to the presence of an agreement to arbitrate, the issue may not be determined on the affidavits but by trial. 9 U.S.C. § 4. *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673 (2nd Cir.1972).

Basic has denied from the start the existence of the agreement to arbitrate and tenders as proof an affidavit in which an account is given of the removal of an arbi-

tration clause from the standard form contract that Basic uses with its subcontractors in favor of a clause requiring that Virginia law apply to the resolution of differences arising from the subcontract. (Affidavit of George G. Buckingham filed November 25, 1981.) This is sufficient to raise a question of fact as to the presence of an agreement to arbitrate. Accordingly, Starr's motion to compel arbitration is DENIED.

Turning now to Starr's motion to strike Basic's demand for a jury trial, it must be pointed out that Basic did not request a jury trial on or before the return date of the petition filed by Starr as required by 9 U.S.C. § 4. Basic would argue that their demand for a jury trial was timely under Fed.R.Civ.P. 38 in that they requested a jury within ten days after the service of the last pleading directed to the issue of the presence of an agreement to arbitrate. If this argument were accepted, then Basic's request for a jury trial would be timely as being within ten days of the filing of Basic's Answer on October 28.

■ The Court cannot accept Basic's argument that Fed.R.Civ.P. 38 applies here. 9 U.S.C. § 4 has specific provisions for the demand and waiver of jury trial under Title 9. The demand and waiver provisions of Fed.R.Civ.P. 38 are inapplicable under Fed. R.Civ.P. 81(a)(3). *See* Vol. 5, *Moore's Federal Practice*, para. 38–122, 2nd ed. 1980. Basic did not request a jury trial in a timely manner and has accordingly waived a jury trial in this matter. *Hamilton Life Insurance Company of New York v. Republic National Life Insurance Co.*, 408 F.2d 606, 609 (2nd Cir.1969).

■ Basic has requested in the alternative that the Court grant a jury trial pursuant to Fed.R.Civ.P. 39(b). This is within the discretion of the Court. The Court is of the opinion, however, that such a request defeats the purpose of Title 9 in that it delays further any determination of the question of arbitrability and requires a full-blown jury for a simple matter of contract interpretation.

Accordingly, Basic's request for a jury trial under Fed.R.Civ.P. 39 is DENIED.

The case will be set for hearing on the threshold issue of whether there is an agreement to arbitrate.

## ON PETITION TO COMPEL ARBITRATION

This action arises under 9 U.S.C. § 4. Petitioner ("Starr") is a North Carolina corporation. Respondent ("Basic") is a Virginia corporation with its principal place of business in Virginia. Jurisdiction is based on the diversity of the parties and an amount in excess of $10,000.00 has been alleged. Starr seeks an order compelling Basic to submit certain disputes arising out of a contract between the parties to arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.

■ The issue before this Court is whether there is an agreement between the parties to submit the matters set forth in Starr's Demand for Arbitration filed on May 27, 1981.[1]

Briefly stated, it is the contention of the Petitioner Starr that the parties have entered into a contract that very clearly requires that all disputes arising out of that contract be resolved by resort to arbitration. On the other hand, Basic denies any agreement to arbitrate, and in the alternative contends that if an agreement to arbitrate is found by this Court, it must be a further finding of this Court that the disputes in question are outside the scope of any agreement to arbitrate. The facts in this matter are as follows.

---

1. In the Memorandum Order of this Court filed January 12, 1982, it was determined that the contract between the parties evidenced interstate commerce within the meaning of 9 U.S.C. § 1, thus bringing this matter under the coverage of Title 9. In addition, it was concluded that there was a factual dispute as to the presence of any agreement to arbitrate. Pursuant to 9 U.S.C. § 4, the case was set for trial. The Memorandum that follows will comprise the Findings of Fact and Conclusions of Law of this Court in accordance with Fed.R.Civ.P. 52.

By general contract dated May 8, 1978, Basic contracted with R.J. Reynolds Industries, Inc. ("Owner") to construct a building in Winston-Salem, North Carolina. Section 5.3.1 of the General Conditions of the contract (Pl's Exhibit #2) contains a "flow through" clause requiring that Basic bind each subcontractor to the same terms in its contract with Basic that Basic is bound to in its contract with the Owner. Also the subcontractor is to be afforded the same remedies against Basic that Basic has against the Owner.[2]

One of the remedies that Basic is afforded against the Owner by the General Conditions of the contract is the right to require that all claims arising out of the contract be submitted to arbitration. This right is set forth in section 7.9.1 of the General Conditions, a standard "all claims" arbitration clause.[3]

The third clause of the General Conditions that should be noted is the governing law provision. Section 7.1.1 of the General Conditions states that "the Contract shall be governed by the law of the place where the Project is located." Recalling that the building is located in Winston-Salem, this Court would apply North Carolina law to a dispute arising between Basic and the Owner.

On June 21, 1978, Basic subcontracted some of the electric work to be performed on the building to Starr, the petitioner in this suit. The subcontract consisted of two parts, a form subcontract and a seven page typewritten appendix to that form subcon-

2. "5.3 SUBCONTRACTUAL RELATIONS

"5.3.1 By an appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by the terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities which the Contractor, by these Documents, assumes toward the Owner and the Architect. Said agreement shall preserve and protect the rights of the Owner and the Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that the subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the Contractor-Subcontractor agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by these Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with his Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the Subcontract, copies of the Contract Documents to which the Subcontractor will be bound by this Paragraph 5.3, and identify to the Subcontractor any terms and conditions of the proposed Subcontract which may be at variance with the Contract Documents. Each Subcontractor shall similarly make copies of such Documents available to his Sub-subcontractors.

3. "7.9 ARBITRATION

"7.9.1 All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof, except as provided in Subparagraph 2.2.11 with respect to the Ar-

chitect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.9.4 and 9.9.5, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. No arbitration arising out of or relating to the Contract Documents shall include, by consolidation, joinder or in any other manner, the Architect, his employees or consultants except by written consent containing a specific reference to the Owner-Contractor Agreement and signed by the Architect, the Owner, the Contractor and any other person sought to be joined. No arbitration shall include by consolidation, joinder or in any other manner, parties other than the Owner, the Contractor and any other persons substantially involved in a common question of fact or law, whose presence is required if complete relief is to be accorded in the arbitration. No person other than the Owner or Contractor shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Any consent to arbitration involving an additional person or persons shall not constitute consent to arbitration of any dispute not described therein or with any person not named or described therein. The foregoing agreement to arbitrate and any other agreement to arbitrate with an additional person or persons duly consented to by the parties to the Owner-Contractor Agreement shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

tract. (Pl's Exhibit # 1). Section 21 of the form subcontract contains a governing law provision stating that "This agreement and all disputes arising out of its performance, shall be governed, construed and resolved according to the laws of the State of Virginia." This clause does not speak in terms of "litigation" or "arbitration," but only states that the laws of Virginia shall apply.

Turning now to the seven page Appendix to the form subcontract, it must be noted that this Appendix is typed rather than printed, unlike the form subcontract. Application of standard rules of contract interpretation would require that the typed provisions of the Appendix take precedence over any conflicting provisions of the form subcontract. A reading of the Appendix reveals that the terms of the Prime Contract between Basic and the Owner where the arbitration clause is located are incorporated into the subcontract between Basic and Starr in at least four places.[4] In view of the above facts, it must be concluded that the subcontract between Starr and Basic very clearly incorporates by reference the arbitration clause of the general conditions. Basic is not a naive party and was represented by counsel in its dealings

with Starr. Basic and Starr negotiated at arm's length in the matter. The subcontract incorporates the arbitration clause by reference in at least four places and specifically mentions the flow through clause of the Prime Contract that gives a subcontractor all of the remedies against Basic that Basic has against the Owner. Any contention that Basic entered into an agreement to arbitrate through inadvertence is without merit.[5]

■ Having found the existence of an agreement to arbitrate between the parties, the Court must go on to determine whether the matters brought up in Starr's Demand for Arbitration are arguably covered by the terms of the contract. *Hamilton Life Ins. Co. of New York v. Republic Nat. Life Ins. Co.*, 408 F.2d 606 (2nd Cir.1969). The relief sought by Starr in the Demand for Arbitration filed with its Complaint in this case is for damages under the subcontract between Starr and Basic. Obviously, this is a matter covered by the terms of the subcontract. Since it is admitted that there has been a refusal to arbitrate, this Court's inquiry must end with the conclusion that Basic is contractually bound to submit to

4. "f. Subcontractor agrees to the provisions of the General Conditions and specifically paragraph 5.3, 'Subcontractual Relations'.

"i. All requirements, directions, instructions, forms to be filled out, etc., required by the Owner and/or Architect subsequent to the date of the Prime Contract but within the limits of requirements covered by the Prime Contract Documents, shall apply equally as well to this Subcontractor, same as if they were attached hereto.

"i. It is understood and agreed that this Subcontract binds this Subcontractor to the terms and conditions of the Prime Contract Documents as being fully applicable to the work to be performed by this Subcontractor, as described herein, and that nothing in this Subcontract and/or Purchase order supersedes, cancels or takes precedence in any way over the requirements, procedures and provisions in the Prime Contract Documents unless specifically so noted herein as an exception.

"o. All the General Conditions and Supplementary Conditions are made a part of this Subcontract Agreement."

5. It was the contention of Basic at trial that the agreement between Basic and Starr was ambiguous on its face. Basic contended that the choice of law provision in its form subcontract requiring that Virginia law apply to all disputes evidenced an intent to litigate the matter. Basic attempted to enter into evidence affidavits of some of Basic's corporate officers stating that it was not the company policy of Basic to enter into arbitration with its subcontractors. This argument fails in three respects. First, it is a finding of this Court that the agreement very clearly incorporates the arbitration clause by reference. Any evidence outside the contract of a contrary intent would be kept out by the parol evidence rule. Second, the clause itself does not speak in terms of arbitration. It only says that the laws of Virginia shall apply. Finally, it is settled law that choice of law provisions in a contract may not be used to defeat one party's rights under Title 9. See *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Burke County Public Schools v. The Shaver Partnership*, 303 N.C. 408, 279 S.E.2d 816, 824–5 (1981).

arbitration the matters presented in Starr's Demand for Arbitration.[6]

Accordingly, an Order will issue.

### ON MOTION FOR INJUNCTION AND STAY PENDING APPEAL

On March 4, 1982, judgment was entered in this Court in favor of Starr. It had been determined at trial that the parties had contracted to submit disputes arising out of a construction contract to arbitration. Pursuant to 9 U.S.C. § 4, the Court ordered Basic to submit to arbitration those matters set forth in the Demand for Arbitration attached as Exhibit "A" to Starr's petition in this suit. Basic has since noted an appeal of the Court's judgment and order and now moves under Fed.R.Civ.P. 62(c) for an injunction and a stay of the order pending the appeal. For the reasons stated below, the motion is denied.

■ The four requisites that must be considered by this Court in judging an application for a stay are set forth in *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir.1970). Basic must show (1) that it will likely prevail on the merits of the appeal, (2) that it will suffer irreparable injury if the stay is denied, (3) that Starr will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay. Each of these criterion will be reviewed in turn.

### (1) LIKELIHOOD THAT BASIC WILL SUCCEED IN THE MERITS OF ITS APPEAL

Starr has raised the argument that the March 3 order of this Court compelling arbitration is not a final judgment and not immediately appealable. Such an appeal, Starr concludes, would be without merit thus rendering a stay of the underlying order inappropriate. This Circuit has not ruled specifically on this point; however,

examination of the case law of other circuits requires a different conclusion.

■ The appealability of a district court order directing arbitration is to be determined by examining the context in which the order was issued. *Rogers v. Schering Corporation*, 262 F.2d 180 (3rd Cir.1959), *cert. den.* 359 U.S. 991, 79 S.Ct. 1121, 3 L.Ed.2d 980. An order for arbitration is a final appealable decision where it is not merely a step in the judicial enforcement of a claim nor auxiliary to a main proceeding but is the main relief sought. *Goodall-Sanford v. United Textile Workers*, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957). Such cases are to be distinguished from those in which the order for arbitration is made in the course of a continuing suit for other relief. *See Schoenamsgruber v. Hamburg American Line*, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989 (1935).

■ In an independent proceeding commenced by a petition to compel arbitration, an order to arbitrate, issued by a district court, constitutes a final judgment and is appealable to a court of appeals. *N.V. Maatschappij Voor Industriele Waarden v. A.O. Smith Corp.*, 532 F.2d 874 (2nd Cir.1976); 9 *Moore's Federal Practice*, Para. 110.24 [4.–1](1).

■ Returning to the case at hand, it must be pointed out that Starr sought no relief from this Court other than an order under 9 U.S.C. § 4 compelling Basic to submit to arbitration. There is no ongoing case over which this Court retains jurisdiction. For this reason, the March 3 order of this Court is a final judgment within the meaning of 28 U.S.C. § 1291 and is appealable under that statute.

---

**6.** Basic contended throughout this matter that it is the duty of this Court to determine whether Starr had given notice of the claim for which it hoped to recover and whether Starr was entitled to recover under the terms of the subcontract. It was Basic's position that there could be no intent on the part of Basic to arbitrate any claim for which recovery is barred. Basic misunder-

stands the role of this Court. This Court is only to determine whether there is an agreement between the parties to arbitrate, and whether the disputes enumerated are within the contemplation of the contract. The Court is not to look to the merits of the dispute itself. *Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711 (2nd Cir.1972).

■ As demonstrated, Basic's appeal would not be dismissed as interlocutory. It is concluded, however, that Basic has not made out a substantial case on the merits and that any success on appeal would be highly unlikely.[1] The case was not a difficult one. In addition, a balancing of the equities that would be involved in granting a stay in this case requires that Basic make a much stronger showing than it has done. *See Washington Metropolitan Area, Etc. v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C. Cir.1977).

In its brief, Basic has presented some of the points that it may raise on appeal. Four of these points merit some discussion. At trial it was concluded that the contract between Basic and Starr evidenced an intent on the part of the signatories to that contract to submit all disputes arising from that contract to arbitration. The contract language was unambiguous with regard to this point.

Basic attempted to enter into evidence affidavits of its officers to the effect that it was never the intent of Basic to enter into arbitration. Finding no ambiguity in the contract, the Court refused to consider the obviously self-serving affidavits of Basic's officers. Authority for this decision is provided by *Parke Construction Co. v. Construction Management Co.,* 37 N.C.App. 549, 246 S.E.2d 564, *cert. den.,* 295 N.C. 733, 248 S.E.2d 864 (1978).

Basic takes issue with this decision relying primarily on two cases. *Bruno v. Pepperidge Farm, Inc.,* 256 F.Supp. 865 (E.D. Pa.1966) and *Par-Knit Mills v. Stockbridge Fabrics,* 636 F.2d 51 (3rd Cir.1980). Both of these cases are clearly distinguishable from the case at hand.

*Bruno v. Pepperidge Farm, Inc.* involved a dispute arising out of a franchise agreement. The franchise agreement contained a very narrow arbitration clause that was limited only to the *valuation* of the franchise. 256 F.Supp. at 867. The court held that the defendant's alleged *in-*

*fringement* of plaintiff's franchise right was not a matter that came within the narrow scope of the arbitration clause. 256 F.Supp. at 868. Contained in the court's opinion is the following language:

"This, [whether the matter at issue was intended to be included in the arbitration clause] in turn, depends upon the intent of the parties as it appears from the language used, its context within the instrument, and the circumstances surrounding its formation and execution." *Id.,* at 868.

Basic cites this language to support its proposition that extrinsic evidence should be allowed to vary the terms of its contract with Starr. This argument fails for two reasons. First, a reading of the court's opinion shows that the court looked no further than the four corners of the franchise agreement in reaching a decision. As a result, the language "and the circumstances surrounding its formation and execution," upon which Basic relies, is merely dictum. Second, the arbitration clause contained in the franchise agreement is much more narrow than the "all disputes" clause contained in the contract between Basic and Starr.

The second case that Basic relies on is distinguishable on its facts. In *Par-Knit Mills, Inc. v. Stockbridge Fabrics,* the Third Circuit vacated an order of the district court compelling arbitration. The order had been given on a motion for summary judgment over the party who opposed arbitration's factual contention that the employee who signed the purported agreement to arbitrate did not have the authority to bind the corporation. In remanding the case, the Third Circuit indicated that the district court should entertain evidence outside the contract to determine whether a valid contract existed. 636 F.2d at 55. This case does not support Basic's attempt to vary the terms of an unambiguous document.

1. The Court is mindful of its duty to allow Basic the opportunity to develop the facts with regard to a stay beyond those which were adduced at trial. *Long v. Robinson,* 432 F.2d at 979. Basic has presented no facts other than those considered at trial.

A second point that Basic may raise on appeal involves the "no damages for delay" clause. Basic contends that this clause evidences an intent on the part of the parties not to *arbitrate* any claim asserted in an attempt to recover such damages. The Court concludes that such a strained interpretation does not follow from the plain language of the clause.

In light of the federal policy favoring arbitration, this Court is not to apply general contract law in determining the scope of the arbitration clause, but rather must require a clearly expressed intent that the matters in question were not intended to be arbitrated. *PAS–EBS v. Group Health, Inc.*, 442 F.Supp. 937 (S.D. N.Y.1977). The clause on which Basic relies describes the time of performance of the contract and cannot in any way be construed as a limitation on the scope of the arbitration clause.

Basic states as another basis for appeal that "[t]he court's memorandum does not deal with the forceful precedent set by *Necchi S.P.A. v. Necchi Sewing Machine Sales Corp.*, 348 F.2d 693 (2nd Cir.1965), *cert. den.*, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966)." The Court does not believe that the *Necchi* case requires extended comment. In the *Necchi* case, a distributor tendered certain matters for arbitration pursuant to the arbitration clause contained in the exclusive distributorship agreement between the parties. One of the matters tendered for arbitration by the distributor concerned alleged unfair trade practices on the part of the manufacturer. A second matter concerned alleged patent infringement by the manufacturer. The distributor could make no plausible claim that either of these issues were governed by the agreement containing the arbitration clause. Accordingly, the court held that there was no agreement to submit these matters to arbitration.

In the instant case, Starr seeks damages for a breach of the agreement between Starr and Basic. Without a doubt, this is an issue that is governed by the terms of the agreement. Without a doubt, this is an issue entirely within the scope of the arbitration clause. Basic's cite to this case does not aid the Court.

Finally, Basic asserts, apparently as a ground for appeal, its objection to language contained in a sentence in this Court's memorandum at page 5: "Basic is not a naive party and was represented by counsel in its dealings with Starr." Upon reflection, the Court concludes that this statement is not borne out by the evidence. Therefore, pursuant to Fed.R.Civ.P. 60(b), the Court would, upon obtaining leave of the Court of Appeals, amend its findings of fact to delete the language. This deletion in no way affects the reasoning of the Court or alters the result of the trial.

In view of the reasons stated above, it is concluded that Basic has not made out a substantial case for success on the merits of its appeal and therefore, has not met the first criterion for the issuance of a stay of the Court's order compelling arbitration. The Court will examine the remaining three criteria.

## (2) INJURY TO BASIC IF THE STAY IS DENIED

Basic must establish that it will suffer irreparable injury if the stay is denied. *Long v. Robinson*, 432 F.2d at 979. Basic states that if the order of this Court compelling arbitration is vacated, then Basic will have lost the funds expended in preparing and presenting defenses in the arbitration hearing. In view of Basic's poor showing on the likelihood of success on the merits of its appeal, the Court does not find the loss of funds that would be expended in the absence of a stay to be an "irreparable injury" within the meaning of *Long v. Robinson*. *See also Virginia Petroleum Jobbers Association v. Federal Power Commission*, 106 U.S.App.D.C. 106, 259 F.2d 921 (1958). Basic has not met the second criterion for a stay of the arbitration order.

## (3) INJURY TO STARR IF THE STAY IS GRANTED

In an effort to satisfy the third criterion of the *Long v. Robinson* test, Basic states

that a stay of the arbitration order would not harm Starr as it would only maintain the status quo. Starr, Basic contends, would be protected against any losses if Starr prevails on appeal by the taxing of costs and the arbitrators' decision on whether to award Starr interest on any recovery. In opposition, Starr asserts that any delay in the arbitration proceedings allows Basic to wrongfully withhold over $441,158.90 in retainage and thereby profit from the differential between the legal and the market rates of interest. Examination of the facts compels the Court to agree that a maintenance of the status quo would be to Starr's disadvantage.

Article 7.8 of the General Conditions of the contract limits interest on payments due and unpaid to the legal rate prevailing at the place of the project. The project is located in North Carolina. The legal rate of interest in North Carolina is 8 per cent. N.C.Gen.Stat. § 24–1. (1981 Supp.) With the prevailing rate of interest on borrowed funds at about 17 per cent as of the time that Starr's brief was filed, Starr stands to lose a substantial amount should this Court grant a stay of the arbitration order. In addition, should the arbitrator find other of Starr's claims to be unliquidated in amount, these claims would bear no pre-judgment interest. Basic has not met the third criterion of the *Long v. Robinson* test.

## (4) PUBLIC INTEREST

This is an action between two private litigants. The public interest is not likely to be directly affected should the Court go either way. Nevertheless, a finding is in order. Basic claims that it has not agreed to arbitrate and concludes that it would not be in the public interest to force it to do so. Basic points to the differences between court and the arbitration process (specifically the lack of appeal from the arbitrators' decision) and states that it is in the public's interest to see that Basic is afforded its due process rights.

As explained earlier, Basic *has* contracted with Starr to submit these claims to arbitration. Basic has given up certain rights in return for an economical and prompt solution to these claims. Therefore, the Court finds that it would be in the public's best interest to see that Basic is held to the bargain that it has struck. In addition, it is in the public's interest that the congestion of the courts' dockets be eased and that the integrity of the arbitration process be maintained.

## CONCLUSION

Basic has satisfied none of the criteria that this Court must consider in judging an application for a stay of an order pending appeal under Fed.R.Civ.P. 62(c). Basic has not made out a substantial case for success on the merits of its appeal. Basic has not called the Court's attention to any irreparable injury that it would suffer in the absence of a stay. A stay would injure Starr by allowing Basic to profit from the differential between the legal and the market rates of interest. The public interest would best be served by holding Basic to its agreement to submit the matters in question to arbitration. Accordingly, in the exercise of its discretion, this Court denies Basic's motion for a stay of its Order dated March 3, 1982, pending appeal.