James STEELE, Jr., Plaintiff,

v.

UNDERWRITERS ADJUSTING
COMPANY, INC., Defendant.

Civ. A. No. 86V–980–E.

United States District Court,
M.D. Alabama, E.D.

Dec. 18, 1986.

Jock M. Smith, Tuskegee, Ala., for plaintiff.

James W. Garrett, Jr., Montgomery, Ala., Walter E. McGowan, Tuskegee, Ala., for defendant.

## OPINION AND ORDER

VARNER, District Judge.

This cause is now before the Court on Plaintiff's motion to remand filed herein October 24, 1986,[1] and on Defendant's motion to dismiss filed herein October 17, 1986. For the reasons expressed herein, the Court reserves ruling on both motions.

On October 9, 1984, the Circuit Court of Macon County, Alabama, entered an Order awarding the Plaintiff herein $4,208.72 as workmen's compensation for a permanent partial disability. The Circuit Court also ordered the defendant in that case, Tuskegee Institute, to continue to furnish the Plaintiff with medical benefits as provided by the Alabama Workmen's Compensation Act. See Order dated October 9, 1984, entered by the Macon County Circuit Court in the case of *Steele v. Tuskegee Institute,* CV 84–123.

Tuskegee Institute was to provide the Plaintiff with medical benefits through the Defendant in this cause, Underwriters Adjusting Company, Inc. [Underwriters]. Underwriters allegedly failed to provide the Plaintiff with medical benefits as required by the Circuit Court Order. As a result, Plaintiff filed suit in the Circuit Court of Macon County, Alabama, claiming compensatory and punitive damages in an unspecified amount against Underwriters for bad faith failure to honor a valid insurance claim. The matter was removed to this Court which may have diversity jurisdiction of the case.

The practice of pleading for monetary relief without being specific as to the amount thereof is apparently authorized under Alabama law provided the damages claimed are general damages. See, e.g., *Page v. Camper City & Mobile Home Sales,* 292 Ala. 562, 297 So.2d 810 (1974) [where complaint alleged that plaintiff's injuries were severe and disabling, without demanding a specific amount of damages, this was sufficient to invoke the jurisdiction of the State Circuit Court]; *Crommelin v. Montgomery Ind. Telecasters,* 280 Ala. 391, 194 So.2d 548 (1967) [general damages do not have to be specifically pleaded in order to give defendant notice that they will be proven at trial; general damages are implied by law].[2]

---

1. Plaintiff's October 24, 1986, "Motion in Opposition to Removal of Plaintiff's Action to the United States District Court" being construed by this Court as a motion to remand.

2. Punitive damages are classified as general damages under Alabama law. See C. Gamble & D. Corley, *Alabama Law of Damages,* § 4–8 at 31 (1982) [citing *Alabama G.S.R. v. Arnold,* 84 Ala. 159, 4 So. 359 (1887); *Wilkinson v. Searcy,* 76 Ala. 176 (1884) ]. For the purposes of this

Shortly after Plaintiff filed his complaint, Defendant Underwriters filed a verified petition for removal, claiming that the amount in controversy exceeded $10,000.00 exclusive of interest and costs. This assertion was based on Underwriters' "reasonable belief" and on the sizeable verdicts that have been returned in bad faith cases by Alabama juries. The Plaintiff has responded by filing a motion to remand, claiming that the requirements for diversity jurisdiction are lacking.[3] Underwriters has countered by filing a motion to dismiss for failure to state a claim and for failure to claim a specific amount of damages as required by law.

Included in the Plaintiff's motion to remand is the following statement:

> "The amount sued for and involved in this controversy is not in excess of the sum of $10,000.00 exclusive of interest and costs as is evident by Plaintiff's prayer for relief in which he, 'demands judgment against the Defendants in the [sic] amount to be fairly ascertained by the jury'."

The first phrase of this sentence appears to be a judicial admission by the Plaintiff that his claim is not worth in excess of $10,000.00. However, in order for a statement to constitute a judicial admission, it must be "deliberate, clear and unequivocable". See *Backar v. Western States Producing Co.*, 547 F.2d 876, 880, n. 4 (5th Cir.1977). The above statement may be made unclear and equivocal by the second half of the quoted sentence. In that portion of the sentence, the Plaintiff claims it is evident from the language used in his prayer for relief that the requisite amount in controversy is not present, but this is obviously not the case. The only thing that is evident from the prayer for relief is that it is not clear exactly what the amount in controversy is. Apparently, the Plaintiff means to argue that, if the plaintiff in a civil action fails to specifically demand an

award in excess of $10,000.00, then the defendant is precluded from removing the case to federal court, regardless of whether the plaintiff might recover well in excess of $10,000.00. This conclusion is supported by the following statement, which is numbered as Paragraph 2 in Plaintiff's motion to remand: "The amount in controversy cannot, by federal law, be based upon the amount the Plaintiff will ultimately recover in the cause of action but simply is contained in Plaintiff's prayer for relief clause." Regardless of what the Plaintiff means by these indefinite, nebulous statements, it does not clearly appear that Plaintiff is making an unequivocable admission that his case is worth less than $10,000.00. Therefore, this Court must arrive at a procedure for determining exactly what the amount in controversy is in this case.

The Plaintiff is correct in his assertion that "the amount claimed by the plaintiff *ordinarily* controls in determining whether jurisdiction lies in the federal court." See *Zunamon v. Brown*, 418 F.2d 883, 885 (8th Cir.1969) [citing *St. Paul Merc. Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)]. The key word here, however, is "ordinarily".

The rule, that the plaintiff's demand for relief controls for purposes of determining federal jurisdiction, is certain and simplistic, but it should not be applied in a wooden fashion that deprives the defendant of his right to remove to federal court. Indeed, as noted by Professor Moore:

> "[C]ertainty and simplicity, while important goals, should not be allowed to blind federal courts to the realities of the magnitude of the controversy. While the plaintiff viewpoint rule has much to recommend it, it should not be applied if to do so destroys jurisdiction when a substantial claim clearly in excess of $10,000.00 is involved." 1 *Moore's Federal Practice*, ¶ .91[1].

motion, at least, the Court will assume it is not necessary to specifically demand damages as long as the averments in the complaint allege conduct on the part of the Defendant that could give rise to a judgment for punitive damages. For the purposes of this motion, the Court will

assume that the averments in this complaint do allege such conduct on the part of Underwriters.

3. The parties being of diverse citizenship, the only issue in this motion concerns the amount in controversy.

To allow this sort of practice would violate this Court's notions of procedural fair play. A plaintiff should not be allowed to deprive a defendant of his right to remove through artful pleading practices. Apparently, the United States Supreme Court would agree:

"If the plaintiff could, no matter how *bona fide* his original claim in state court, reduce the amount of his demand to defeat federal jurisdiction, the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice. The claim, whether well or ill founded in fact, fixes the right of the defendant to remove, and the plaintiff ought not to be able to defeat that right and bring the cause back to the state court at his election. If he does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *Saint Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294, 58 S.Ct. 586, 593, 82 L.Ed. 845 (1938) [emphasis in original]

This same reasoning should apply to the situation in the case *sub judice,* where the Plaintiff completely failed to demand a specific monetary figure, apparently for the purpose of avoiding federal jurisdiction. The Plaintiff should not be allowed to rob Underwriters of its right to remove by demanding such damages as may be "fairly ascertained by the jury". Permitting such practice allows the Plaintiff to "have his cake and eat it too". In other words, the Plaintiff effectively prevents federal jurisdiction by failing to demand a specific monetary figure, while making it possible for the jury to return a verdict well in excess of $10,000.00. Such an approach is simply unfair and will not be permitted by this Court.

However, what is this Court to use as a guidepost in determining whether the requisite jurisdictional amount is in controversy if it is not to look to the *ad damnum*

clause in the complaint? This question is answered in the case of *Family Motor Inn v. L–K Enterprises Div. Consol. Foods Corp.*, 369 F.Supp. 766 (E.D.Ky.1973). In that case, the Court stated: "Where the complaint is silent regarding monetary damages, the court may turn to the petition for removal" to ascertain the amount in controversy. *Id.* at 768. In looking to the petition for removal, this Court must find to a legal certainty that Plaintiff could not recover in excess of $10,000.00 exclusive of interest and costs before federal jurisdiction can be denied. See *Love v. Budai*, 665 F.2d 1060, 1063 (D.C.Cir.1980); *Lee v. Kisen*, 475 F.2d 1251, 1253 (5th Cir.1973).[4] Nonetheless, the burden is still on the party asserting federal jurisdiction to prove to the Court that the requisite jurisdictional amount is in controversy. See *Fountain v. Metropolitan Atlanta Rapid Transit Authority*, 678 F.2d 1038, 1041 (11th Cir. 1982). In order to meet this burden, Underwriters must prove by a preponderance of the evidence that the amount in controversy exceeds the minimum sum necessary to confer federal jurisdiction. See *Shaffer v. Coty*, 183 F.Supp. 662, 664 (S.D.Ca.1960).

As noted, the Plaintiff has sued Underwriters under the tort of bad faith. The tort of bad faith in Alabama has been judicially legislated and is in the embryonic stage. This tort theory was recognized as a viable claim only as recently as 1981. See *Chavers v. National Security Fire & Cas. Co.*, 405 So.2d 1, 7 (Ala.1981). Since that time, Alabama juries have been quite generous in the amounts they have awarded plaintiffs in bad faith cases, with many of the verdicts exceeding one million dollars. See, e.g., *Aetna Life Ins. Co. v. Lavoie*, 470 So.2d 1060 (Ala.1985) [award of $3,500,000.00 as punitive damages in bad faith case where actual damages equaled only $1,650.22], *vacated and remanded on other grounds,* —— U.S. ——, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986); *Nationwide Mutual Ins. Co. v. Clay*, 469 So.2d 533 (Ala.1985) [damages of $46,165.00 on con-

---

**4.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) [en banc], the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

tract count and $1,250,000.00 in punitive damages on bad faith count. Alabama Supreme Court refused to remit damages as excessive]; *Continental Assurance Co. v. Kountz*, 461 So.2d 802 (Ala.1984) [award of $23,000.00 in actual and punitive damages where actual damages equaled only $2,600.00]; *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So.2d 916 (Ala.1981) [award of $1,100,000.00 in punitive damages in bad faith case remitted to $100,000.00. Actual damages equaled only $6,000.00].[5]

As is obvious from previous bad faith cases, it is possible for a plaintiff to suffer relatively minor actual damages and still recover a substantial jury verdict. Hence, Underwriters' "reasonable belief" that the amount in controversy is in excess of $10,-000.00 is not without merit. However, this assertion alone is not enough to enable Underwriters to carry the burden of proving jurisdiction. On the other hand, the verdicts rendered in past bad faith cases and the allegations in this case make it impossible for this Court to conclude to a legal certainty that the Plaintiff will be unable to collect an amount greater than the minimum jurisdictional sum. Therefore, as noted, this Court must arrive at a method for ascertaining what the actual amount in controversy is in this case.

Indeed, this Court not only has the power to determine whether the facts requisite to jurisdiction exist, it has the duty to do so. See *Shaffer v. Coty*, supra, 183 F.Supp. at 665. "The scope of [this] pre-trial jurisdictional inquiry must of necessity turn upon the specific pleadings and facts involved in each particular case." *Zunamon v. Brown*, supra, 418 F.2d at 886. The broad discretion granted the federal trial courts in determining whether the necessary jurisdictional facts exist is evident from the case of *Gibbs v. Buck*, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939).

In *Gibbs*, the United States Supreme Court was faced with the issue of how a trial court should determine whether the requisite amount in controversy is present.

In *Gibbs*, the defendant filed a motion to dismiss, claiming that the plaintiff therein had failed to prove the jurisdictional amount. The district court found that the jurisdictional amount was present and the defendant appealed. The Supreme Court addressed the issue of the extent of the district court's authority for determining the amount in controversy. The Court stated:

"The basis of [defendant's attack] is that there is a lack of the essential allegations as to the value of the matter in controversy. As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." Id. at 71–72, 59 S.Ct at 729 [citing *Wetmore v. Rymer*, 169 U.S. 115, 18 S.Ct. 293, 42 L.Ed. 682; *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; *KVOS v. Associated Press*, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183].

The issue turns, therefore, to a determination of the procedure to be used by the Court in arriving at a decision as to the amount in controversy in this case. An analysis of the cases that have dealt with this problem will be helpful in reaching that determination. These decisions indicate that " * * * widely different procedures may be both sensible and desirable" in determining what the amount in controversy is in particular cases. *Shaffer*, 183 F.Supp. at 668.

In *Kantor v. Comet Press Books Corp.*, 187 F.Supp. 321 (S.D.N.Y.1960), the plaintiff sued for $50,000.00 in compensatory damages and $20,000.00 in punitive damages, all based upon a fraud count. It became apparent that certain damages claimed by the plaintiff were not recoverable in a fraud action, and the defendant challenged jurisdiction, claiming that the amount in controversy was less than $10,-000.00. The plaintiff failed to counter the defendant's claim, and it appeared to the Court that the defendant's contention was

---

**5.** Although these cases involved substantial awards of punitive damages, such exemplary damages are included in the amount in controversy as a general rule if they are legally recov-

erable. See *Ball v. Preferred Life Assurance Society*, 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943).

correct. However, rather than dismiss the case for lack of jurisdiction, the Court gave the plaintiff 30 days within which to file additional affidavits and other evidence in support of his claim that federal jurisdiction existed. See *Id.* at 323.

In *Bruno v. Pepperidge Farm,* 256 F.Supp. 865 (E.D.Pa.1966), the plaintiff sued for wrongful termination of a franchise. In his *ad damnum,* he demanded $11,950.00 based on the value of the franchise, lost profits and the value of goods in stock at the time of the termination of the franchise. The defendant challenged jurisdiction, claiming that the requisite amount in controversy was not present. This was so, claimed the defendant, because the plaintiff assigned a value to the franchise that was greater than what it was actually worth. This resulted in an amount in controversy of greater than $10,000.00 when the amount in controversy was allegedly much less. The Court tended to agree with the defendant; however, the plaintiff was able to persuade the Court not to dismiss the case by arguing that the unlawful infringement of the franchise claim by itself might result in a verdict greater than $10,-000.00. However, the plaintiff could not be sure that this was the case because all of the records necessary to establish such a contention were in the control of the defendant. The Court, " * * * in the interests of maintaining the jurisdictional prerequisites to actions in [the federal courts] and in an effort to provide the plaintiff with sufficient time within which to discover the necessary facts [to support jurisdiction]," ordered that the plaintiff would have 90 days to employ discovery to ascertain the amount involved in the controversy. *Id.* at 870.

This Court feels that the approaches taken in *Kantor* and *Bruno* could be useful in the case *sub judice.* A period of discovery which has as its sole purpose the determination of the amount in controversy would clarify the jurisdictional question in this case. This will give the Defendant an opportunity to submit requests for admissions, etc., in an effort to require Plaintiff to be specific regarding the value of Plaintiff's case. It will also give the Plaintiff an opportunity to submit an affidavit admitting that his case is worth less than $10,-000.00, if that was, in fact, what Plaintiff was attempting to do in his motion to remand.

Therefore, it is ORDERED by this Court that, effective as of the date of this Opinion and Order, the Plaintiff and the Defendant shall have 30 days in which to engage in discovery and submit evidence for the purpose of determining the amount in controversy in this case.

It is further ORDERED by this Court that the time within which a party must respond to the discovery requests of the opposing party will be 10 days and no longer.

This Court hereby reserves ruling on Plaintiff's motion to remand and on Defendant's motion to dismiss.